RECORD NO. 13-2420

# IN THE
# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE FOURTH CIRCUIT

CLINCHFIELD COAL COMPANY,

*Petitioner,*

v.

HAROLD BOSTIC;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

APPEAL FROM AN ORDER OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

**OPENING BRIEF OF PETITIONER**

Timothy W. Gresham
PENN, STUART & ESKRIDGE
208 East Main Street
Post Office Box 2288
Abingdon, Virginia 2421-2288
(276) 623-4408
tgresham@pennstuart.com

*Counsel for Petitioner*
*Clinchfield Coal Company*

February 20, 2014

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
A Division of Lantagne Duplicating Services

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO


2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    YES    NO
    If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    YES    NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

# CERTIFICATE OF SERVICE

***************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____        _____
        (signature)                                      (date)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................... ii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION....................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .......................1

STATEMENT OF THE CASE.............................................................2

STATEMENT OF FACTS..................................................................3

SUMMARY OF THE ARGUMENTS ....................................................4

ARGUMENT ...............................................................................6

    I.   STANDARD OF REVIEW .........................................................6

    II.  ALJ ERRED IN FINDING CLINCHFIELD FAILED TO
        REBUT THE PRESUMPTION UNDER 20 C.F.R. §
        718.305(d)(1)(i)(A)..............................................................7

    III. THE ALJ ERRED IN FINDING CLAIMANT AFFIRMATIVELY
        PROVED LEGAL PNEUMOCONIOSIS .......................................18

    IV. THE ALJ ERRED IN FINDING CLINCHFIELD FAILED TO
        REBUT THE PRESUMPTION UNDER 20 C.F.R. §
        718.305(d)(1)(ii)..................................................................22

CONCLUSION..............................................................................22

REQUEST FOR ORAL ARGUMENT..................................................24

CERTIFICATE OF COMPLIANCE ....................................................25

FILING AND MAILING CERTIFICATE .............................................26

i

## TABLE OF AUTHORITIES

Cases:

Dehue Coal Co. v. Ballard,
 65 F.3d 1189 (4th Cir. 1995) ...................................................................7

Director, OWCP v. National Mines Corp.,
 554 F.2d 1267 (4th Cir. 1977) ...........................................................1

Grigg v. Director, OWCP,
 28 F. 3d 416 (4th Cir. 1994) .............................................................21

Hobbs v. Clinchfield Coal Co.,
 45 F.3d 819 (4th Cir. 1995) .................................................................8

Milburn Colliery Co. v. Hicks,
 138 F.3d 524 (4th Cir. 1998) ............................................... *in passim*

Mingo Logan Coal Co. v. Owens,
 724 F.3d 550 (4th Cir. 2013) ..............................................................9

Nat'l Mining Assoc. v. Dept. of Labor,
 292 F.3d 849 (D.C. Cir. 2002).....................................................10, 11

NLRB v. Cutting, Inc.,
 701 F. 2d 659 (7th Cir. 1983) ...........................................................17

Peabody Coal v. Lowis,
 708 F. 2d 266 (7th Cir. 1983) .....................................................15, 17

Richardson v. Perales,
 402 U.S. 389 (1971)......................................................................7, 20

Sterling Smokeless Coal Co. v. Akers,
 131 F.3d 438 (4th Cir. 1997) .......................................................6, 15

Westmoreland Coal Co., Inc. v. Cochran,
 718 F.3d 319 (4th Cir. 2013) .............................................................7

Statutes and Regulations:

30 U.S.C. § 901, et seq.................................................................1, 7

30 U.S.C. § 902(b) .......................................................................7

30 U.S.C. § 921(c) .......................................................................8

30 U.S.C. § 921(c)(4) ...............................................................2, 8, 9

30 U.S.C. § 932(a) .......................................................................1

33 U.S.C. § 919(a) .......................................................................1

33 U.S.C. § 921(b) .......................................................................1

33 U.S.C. § 921(c) .......................................................................1

20 C.F.R. § 718.201(a) .................................................................7

20 C.F.R. § 718.201(a)(1) .............................................................8

20 C.F.R. § 718.201(a)(2) .............................................................8

20 C.F.R. § 718.202(a)(4) ............................................................19

20 C.F.R. § 718.204 .....................................................................9

20 C.F.R. § 718.305(b) .................................................................9

20 C.F.R. § 718.305(c) .................................................................9

20 C.F.R. § 718.305(d)(1) .............................................................9

20 C.F.R. § 718.305(d)(1)(A) ......................................................1, 7

20 C.F.R. § 718.305(d)(1)(ii).....................................................2, 22

<u>STATEMENT OF SUBJECT MATTER</u>
<u>AND APPELLATE JURISDICTION</u>

This appeal is from a claim for miner's benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended ("the Act"), 30 U.S.C. § 901, *et seq.*  The Administrative Law Judge ("ALJ") authorized to decide cases under the Act issued a decision on September 24, 2012.  33 U.S.C. § 919(d), as incorporated by 30 U.S.C. § 932(a); <u>Director, OWCP v. National Mines Corp.</u>, 554 F.2d 1267 (4th Cir. 1977); Joint Appendix ("JA") 404-419.  The Benefits Review Board ("the Board") reviewed the ALJ's decision under the authority granted it under 33 U.S.C. § 921(b), as incorporated by 30 U.S.C. § 932(a).  The Board on September 25, 2013, affirmed the ALJ's September 24, 2012 decision.  JA 420-429.  This Court has jurisdiction to review the Board's decision pursuant to 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a).  The Petitioner invoked this Court's jurisdiction by filing a Petition for Review on November 22, 2013, within 60 days of the Board's decision.  JA 430-432.

**<u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>**

I.    **ARE THE ALJ'S FINDINGS THAT CLINCHFIELD FAILED TO REBUT THE PRESUMPTION UNDER 20 C.F.R. § 718.305(d)(1)(i)(A) SUPPORTED BY SUBSTANTIAL EVIDENCE, RATIONAL, AND ACCORDING TO LAW?**

II.   **ARE THE ALJ'S FINDINGS THAT CLAIMANT HAS LEGAL PNEUMOCONIOSIS SUPPORTED BY SUBSTANIAL EVIDENCE, RATIONAL, AND ACCORDING TO LAW?**

1

### III. ARE THE ALJ'S FINDINGS THAT CLINCHFIELD FAILED TO REBUT THE PRESUMPTION UNDER 20 C.F.R. § 718.305(d)(1)(ii) SUPPORTED BY SUBSTANTIAL EVIDENCE, RATIONAL, AND ACCORDING TO LAW?

## STATEMENT OF THE CASE

Harold H. Bostic, ("claimant") filed a claim for federal black lung benefits on October 5, 2009. JA 55. After processing by the Department of Labor, the District Director awarded benefits to the claimant, and Clinchfield Coal Company ("Clinchfield") appealed the decision to the Office of Administrative Law Judges. Administrative Law Judge Christine Kirby ("the ALJ") issued a Decision and Order ("D&O") awarding benefits on September 24, 2012. JA 404-419. The ALJ found claimant invoked the 15-year rebuttable presumption found at 30 U.S.C. §921(c)(4). JA 409. She then found Clinchfield failed to rebut the presumption because it did not prove 1) the claimant does not have legal pneumoconiosis and 2) the claimant's total disability did not arise out of coal mine employment. JA 417.

Clinchfield appealed the ALJ's decision to the Benefits Review Board ("the Board") on November 2, 2012, but the Board affirmed the ALJ in a decision dated September 25, 2013. JA 420-429. Clinchfield timely appealed the Board's decision by filing its Petition for Review on November 22, 2013. JA 430-432.

2

## STATEMENT OF FACTS

Claimant worked 23 years as a coal mine miner. JA 406. He last worked in May 1990. JA 394. Claimant gave incorrect, underestimated, and false smoking histories to the physicians who examined him for his present black lung claim. He reported to Dr. Al-Khasawneh in 2009 that he tried only two cigarettes when he was younger. JA 64. He told Dr. Fino in 2010 that he never smoked. JA 120. In 2011, Dr. Castle reported that claimant told him that he never smoked. JA 184. During the two examinations conducted by Dr. Gallai in 2011, claimant stated he never smoked. JA 231 & 278.

In prior claims, claimant reported varying histories. In 1993, he told Dr. Forehand he smoked one-half pack of cigarettes per day from 1970 to 1990. JA 408. Dr. Dahhan, in his 1994 exam report, recorded a smoking history of one pack per week beginning at age 30 until 1990. Id. At his 1996 DOL exam, claimant reported to Dr. Forehand he smoked three to four cigarettes per day from 1970 to 1996. Id. In 1997, Dr. Sargent recorded claimant smoked two cigarettes per day for 10 years. Id. However, he stated claimant's carboxyhemoglobin level was elevated to 6.5%. JA 189. During the 2000 exam by Dr. Forehand, claimant reported a history of three cigarettes per day for 10 years. JA 408.

Claimant gave differing smoking histories to his treating physicians. In August 1990, he told Dr. Iosif that "he has smoked about one pack of cigarettes per

3

day for the last 25 years." JA 4. According to Dr. Bertuso in his January 8, 1998 report, claimant continued to smoke at a rate of one pack of cigarettes per day. JA 200. Chart notes from Cardiovascular Associates from September 30, 1999 through September 24, 2003 stated claimant continued to smoke at least one pack per day "as he has all his life." Claimant's history included "tobacco addiction." JA 200-202. Dr. Turner's office note from September 30, 1999, states claimant "obviously needs to address his tobacco addiction promptly." JA 202. Office notes from Dr. Chaudhry from April 17, 2002 through November 18, 2003 state claimant "does continue to smoke quite heavily." JA 203.

At the November 30, 2011 hearing before the ALJ, claimant testified he had not smoked a cigarette in 25-30 years or since 1981-1986. JA 393. When questioned by Clinchfield's counsel, he generally denied the contradictory smoking histories reported in his attending physicians' notes. JA 395-401.

## SUMMARY OF THE ARGUMENTS

The ALJ committed several errors in her September 24, 2012 D&O awarding benefits. The Board failed to correct those errors in its September 24, 2013 decision. Specifically, the ALJ erred by finding that Clinchfield failed to rebut the presumption of total disability due to pneumoconiosis, by failing to prove legal pneumoconiosis. The ALJ committed error by improperly rejecting and

discount the opinions of Drs. Castle and Fino, while accepting medical opinions that were based on an incomplete understanding of claimant's smoking history. Additionally, the ALJ discounted and rejected Clinchfield's experts' opinions for making findings that are not supported by the record. The ALJ selectively analyzed the evidence and substituted her opinions for those of qualified experts. As the ALJ's findings on this are not supported by substantial evidence, rational or according to law, this Court must vacate the decisions of the Board and the ALJ and remand the case for proper consideration.

The ALJ committed error in affirmatively finding the existence of legal pneumoconiosis, by relying on the opinions of physicians who asserted claimant must have legal pneumoconiosis, as there were no other possible exposures that could have caused claimant's impairment. Despite, these physicians being unaware that claimant had smoked for 30 years and continued to smoke after leaving the mines, the ALJ found the opinions of these physicians "well-reasoned" and "well-documented," because she erroneously inferred the physician's would have still opined the same had they known claimant's smoking history. The ALJ improperly substituted her unqualified opinion and speculated as to what the physicians might have stated. Based on this erroneous finding, the ALJ rejected Clinchfield's experts on the issue of rebuttal by ruling out pneumoconiosis as a cause of claimant's disability, based on this Court's decisions that allow causation

5

opinions to receive little or no weight if the physician stating that opinion does not diagnose pneumoconiosis, contrary to the ALJ's finding. The ALJ's findings are not supported by substantial evidence, not rational, and not according to law. This Court must vacate the decisions of the Board and the ALJ and remand the case for proper consideration.

## **ARGUMENT**

### I.    **STANDARD OF REVIEW**

The Court reviews:

> claims for benefits under the Act to determine whether substantial evidence supports the ALJ's findings of fact . . . in determining whether the substantial evidence supports the ALJ's factual determinations [the Court] must first address whether all the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence . . . [t]he court review[s] the ALJ's and the Board's conclusions of law de novo to determine whether they are rational and consistent with applicable law.

Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). If substantial evidence does not support the ALJ's findings; if the ALJ failed to analyze all the relevant evidence; or if the ALJ failed to adequately explain the rationale for crediting certain evidence, the Court should remand the case for proper consideration. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 440 (4th Cir. 1997). Substantial evidence "means such relevant evidence as a

6

reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).

The Court reviews the Board's "decisions for errors of law and to ensure the [Board's] decision adhered to its statutory standard of review. [citation omitted]. To that end, we undertake an independent review of the record, as in the place of the BRB, to determine whether the ALJ's factual findings were based upon substantial evidence in the record." <u>Dehue Coal Co. v. Ballard</u>, 65 F.3d 1189, 1193 (4th Cir. 1995).

## II.    ALJ ERRED IN FINDING CLINCHFIELD FAILED TO REBUT THE PRESUMPTION UNDER 20 C.F.R. § 718.305(d)(1)(i)(A).

The Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901 *et seq.* provides compensation to coal miners who can establish that they are totally disabled due to pneumoconiosis. <u>Westmoreland Coal Co., Inc. v. Cochran</u>, 718 F.3d 319, 320 (4th Cir. 2013). Pneumoconiosis is defined by the Act and the Secretary of Labor's regulations as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a). The regulations further define pneumoconiosis as either "clinical" or "legal." "Clinical" pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of

7

substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to the deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). "Legal" pneumoconiosis is "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). It is "significantly broader" than the definition of clinical pneumoconiosis. See Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir. 1995).

To receive benefits "a claimant must prove that (1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability." Milburn Colliery Co. v. Hicks, 138 F.3d at 529.

The Act has provided presumptions to assist claimants in meeting their burden. See, 30 U.S.C. § 921(c). A presumption applies in claims filed after January 1, 2005 and pending on or after March 23, 2010. 30 U.S.C. § 921(c)(4). A claimant must prove two predicate facts to invoke the presumption. First, the miner must have worked at least 15 years in one or more underground coal mines or in other coal mines in conditions substantially similar to those in underground mines and can prove that he or she has a totally disabling respiratory impairment is presumed disabled by pneumoconiosis. Second, the miner must prove a totally

8

disabling respiratory impairment as provided for by the Secretary's regulations. See, 20 C.F.R. § 718.305(b)(2013); 20 C.F.R. § 718.204.  Proof of those two predicate facts, results in the presumed facts that claimant has pneumoconiosis and pneumoconiosis caused or contributed to his disability.  30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(c); see, Mingo Logan Coal Co. v. Owens, 724 F.3d 550, 553 (4th Cir. 2013).  Once the presumption is invoked, the burden shifts to the responsible operator to rebut the presumption.  According to 20 C.F.R. § 718.305(d)(1), the responsible operator can rebut the presumption by proving the miner does not or did not have clinical or legal pneumoconiosis or that no part of the miner's disability was caused by clinical or legal pneumoconiosis.

In the present case, claimant undisputedly worked more than 15 years in an underground coal mine and he has a disabling respiratory or pulmonary impairment.  JA 406.  Therefore, the burden shifted to Clinchfield to rebut the presumption.  Based on claimant's concession that he did not have clinical pneumoconiosis, the ALJ did not discuss that issue nor did she address the evidence that proved the lack of clinical pneumoconiosis.  J.A. 410.  The ALJ then found Clinchfield could not rebut the presumption, because Clinchfield could not prove claimant does not have legal pneumoconiosis.  JA. 416.

The ALJ erred in her analysis of the opinions of Dr. Fino and Dr. Castle in finding their opinions were insufficient to prove claimant did not have legal pneumoconiosis. These errors are sufficient to vacate the ALJ's decision.

In her discussion of Dr. Fino, she discounted his opinion that claimant's impairment was due to asthma, not coal mine dust exposure. First, she asserted he failed to discuss the etiology of claimant's asthma or whether it was caused or contributed by coal dust exposure. JA 416. Contrary to her assertion, Dr. Fino stated the claimant's asthma that was unrelated to pneumoconiosis or coal dust exposure. JA 353-355. As he did what she stated he did not do, her findings are not supported by substantial evidence.

The ALJ then asserted that Dr. Fino stated that he would expect the development of some impairment consistent with coal dust exposure by the time he left work, if claimant's respiratory disability were related to his exposure to coal dust. In his testimony Dr. Fino stated the literature and articles relied on by the Department of Labor in its 2000 rulemaking indicated that miners who develop obstruction, do so early in their mining career. JA 354. The ALJ asserted Dr. Fino's opinion was contrary to the Department's position that pneumoconiosis is a latent and progressive disease. JA 416.

The ALJ's position is not correct, considering Nat'l Mining Assoc. v. Dept. of Labor, 292 F.3d 849 (D.C. Cir. 2002). In Nat' Mining, the Secretary of Labor,

10

during oral argument before the Court, conceded the most common forms of pneumoconiosis are not latent and progressive and "acknowledged that latent and progressive pneumoconiosis is rare, occurring in a small percentage of cases, by all accounts. [Citation omitted.] Nothing in the disputed rule says otherwise. The rule simply prevents operators from claiming that pneumoconiosis is *never* latent and progressive." Id. at 863.  (Emphasis in original.)

Dr. Fino never stated denied that pneumoconiosis is latent or progressive. JA 353-354, 358-359.  He simply referred to the well-established literature and the Secretary's own concession that in most cases it is not and concluded that claimant's case is not atypical. The ALJ's conclusion that Dr. Fino's opinion is contrary to the regulations fails to address Dr. Fino's opinion that claimant has asthma that developed some three to six years after claimant left the mines that fully explains claimant's disabling impairment.

The ALJ then assails Dr. Fino's opinion, as he relied on the fact that claimant's respiratory impairment was reversible, because she asserts he did not elaborate on the evidence he relied on to show reversibility.  JA 416.  Contrary to that finding, Dr. Fino testified claimant had periods of reversibility, as shown on pulmonary function tests ("PFT"), from 1993 until the most recent PFT done in this case.  JA 347-352.  As Dr. Fino did elaborate on the evidence he relied on to

11

show the reversibility of claimant's respiratory impairment, the ALJ's findings on this issue are not supported by substantial evidence or rational.

The ALJ asserted Dr. Fino relied on generalizations, thus she was not required to give his opinion any weight.  JA 416.  As the ALJ failed to identify what generalizations Dr. Fino relied on, this conclusion is legal error.  Dr. Fino based his opinions on the general nature of pneumoconiosis, including that it is an irreversible disease, the specific findings from his pulmonary examination of claimant, and claimant's medical records.  These specifics amply supported Dr. Fino's opinion that claimant's respiratory impairment was not related to pneumoconiosis or coal dust exposure.

Dr. Fino testified he would expect to see some gas exchange abnormality where coal dust or pneumoconiosis causes impairment, but claimant had no such abnormalities existed. JA 352.  The ALJ attacked this statement by Dr. Fino as categorically asserting miners cannot have pneumoconiosis without proof of arterial blood gas studies ("ABG") showing disabling values.  JA 416.  Dr. Fino never stated that nor was his statement amenable to such an inference.  The ALJ's straw man argument here is invalid and shows that her criticisms are not based on a dispassionate, unprejudiced examination of the evidence.  The ALJ has "failed to adequately explain [her] reasons for crediting certain evidence and discrediting other evidence . . ." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir.

1998).    Her finding that Clinchfield failed to rebut the presumption by showing claimant does not have legal pneumoconiosis is not supported by substantial evidence, rational or according to law.

The ALJ committed error in her treatment of Dr. Castle's opinion that claimant's respiratory impairment was not caused by coal dust exposure, but was due to many years of smoking.  Dr. Castle listed as one of several reasons he relied on in finding claimant's respiratory impairment not related to coal dust was coal dust generally it causes an irreversible mixed obstructive and restrictive ventilatory defect.   JA 211.   He stated claimant's pulmonary studies showed no restrictive impairment. The ALJ asserted Dr. Castle's opinion is contrary to the Department of Labor's position that pneumoconiosis *may* cause obstructive impairment even absent a restrictive impairment.   JA 416.   The ALJ relied on the chance that claimant might be one of the cases where CWP caused only obstructive impairment to discredit the well-reasoned and supported opinion of Dr. Castle.

When judged by the ALJ's characterization of the Department of Labor's position that coal dust *may* cause obstructive impairment absent a restrictive impairment, her disregarding Dr. Castle's opinion is inconsistent with the DOL's position and must be reversed, as it is not according to law.  At no point did Dr. Castle state that coal dust never causes obstructive impairment without restriction. In fact Dr. Castle admitted that coal dust can cause a purely obstructive

13

impairment. JA 328. Dr. Castle opinion is entirely consistent with the DOL's position. The ALJ's own characterization of the DOL's position that coal dust *may* cause obstructive impairment absent a restrictive impairment and Dr. Castle agreement with that statement does not mean coal dust always causes obstruction without restriction. This is not a reasonable or rational basis to find Dr. Castle's opinion is insufficient to prove, in this case, that coal dust did not cause or contribute to claimant's obstructive impairment.

Dr. Castle properly opined claimant's impairment was not caused by coal dust exposure. He found claimant had tobacco smoke-induced airway obstruction with a significantly reversible component and air trapping, as the cause of his impairment. JA 320. He relied on claimant's continued cigarette smoking that continued for many years after leaving the mines. In arriving at his diagnosis, Dr. Castle fully considered claimant's more than 20 years of coal mine employment. JA 320-321. Again, the ALJ "failed to adequately explain [her] reasons for crediting certain evidence and discrediting other evidence . . ." Milburn Colliery Co., at 528.

Another reason the ALJ used to criticize and discount Dr. Castle's opinion was that "he opined Claimant had clinical emphysema," but failed to explain the etiology of claimant's emphysema. JA 416. However, she committed clear error as Dr. Castle never diagnosed claimant with clinical emphysema. During his

14

deposition Dr. Castle testified, "I don't think he has clinical emphysema." JA 318. He stated the lack of any true diffusion abnormalities on the PFTs ruled out the existence of clinical emphysema. Id. Since Dr. Castle did not diagnose clinical emphysema and, in fact, denied its existence, he was under no duty to explain the etiology of it. The ALJ using that to find his opinion insufficient to prove claimant does not have legal pneumoconiosis is legal error, as her findings are not supported by substantial evidence or rational.

The ALJ engaged in selective analysis of the evidence in this case, rendering her reasoning improper. See, Peabody Coal v. Lowis, 708 F. 2d 266, 276 (7th Cir. 1983). The ALJ found the opinions of Drs. Gallai and Al-Khasawneh well-documented and well-reasoned, when they did not and could not consider whether smoking was the cause of claimant's respiratory impairment, because claimant lied to them and they reviewed no other evidence. However, Dr. Castle's opinion based on his examination of claimant and his review of claimant's medical records that document, without doubt, that claimant had a significant history of smoking that continued 10-13 years after he left the mines is not worthy of credit. This is not rational decision-making as is required. Milburn Colliery Co., at 528; Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 1997).

The ALJ castigates Dr. Castle for not explaining "that Claimant's condition is possibly due to cardiac disease." JA 416. Dr. Castle noted claimant had a

15

significant cardiac history, including coronary artery disease, a myocardial infarction, some degree of heart failure, and a reduced ejection fraction of the left ventricle. He then stated these problems can result in shortness of breath. JA 210. However, he did not implicate these heart problems in diagnosing claimant's respiratory impairment or its cause. For the ALJ to assert this is another reason to diminish the expert opinion of Dr. Castle is irrational. It is more selective analysis; picking up statements by Dr. Castle that were irrelevant to his actual opinion and then attacking him for not explaining them. At most he mentioned that claimant might be independently disabled by cardiac problems, but those were conditions of the general population, not coal dust related. JA 212. Since Dr. Castle did not find claimant's cardiac problems caused claimant's respiratory impairment, it played no role in his determination that claimant did not have legal pneumoconiosis.

The ALJ asserts that, like Dr. Fino, Dr. Castle is entitled to little weight as his opinions are based on "generalizations" about pneumoconiosis and not about the miner. JA 416. This assertion is unsupported by substantial evidence and not rational. Dr. Castle relied on the following facts: the miner smoked for at least 25 years and continued to smoke many years after he quit working; claimant's pulmonary function showed reversibility, which is not consistent with the irreversible nature of pneumoconiosis; and claimant had normal diffusion testing, ruling out clinical emphysema. Dr. Castle did not rely on "generalizations," but

16

claimant-specific findings. The ALJ's attempt to cast Dr. Castle's findings as based on "generalities" is clear error. It is not based on any evidence in the record, much less substantial evidence.

While Clinchfield bears the burden to prove the miner does not have legal pneumoconiosis, the ALJ is not free to selectively analyze the evidence or to replace her opinions for those of medical experts. See, <u>Milburn Colliery</u>, 138 F.3d at 533. The only evidence in the record contradicting Dr. Castle and Dr. Fino's opinions are the opinions of Drs. Gallai and Al-Khasawneh. The "scrutiny" she applied to these opinions was to accept them, although claimant lied to them regarding his smoking history and they reviewed no other medical records that would have illuminated claimant's lie. She found their opinions that claimant had legal pneumoconiosis "well-documented and well-reasoned," because, in her opinion, they would still have found that coal dust was a contributing cause, had they been aware of the miner's smoking history. JA 415. These statements and findings are irrational. It is the ALJ substituting her unqualified opinion for what qualified experts might have opined. As an inference, it is neither reasonable nor supported by substantial evidence. Selective analysis "is particularly inappropriate in a case where the inferences drawn are contrary to direct, positive testimony." <u>Lowis</u>, 708 F. 2d at 276, quoting, <u>NLRB v. Cutting, Inc.</u>, 701 F. 2d 659, 665 (7th Cir. 1983). The ALJ's findings on this issue are not supported by substantial

evidence, rational or according to law. The Decision & Order must be vacated and remanded for proper consideration.

## III.   THE ALJ ERRED IN FINDING CLAIMANT AFFIRMATIVELY PROVED LEGAL PNEUMOCONIOSIS.

After finding Clinchfield failed to rebut the presumption by failing to prove no legal pneumoconiosis, the ALJ began her consideration of whether Clinchfield rebutted the presumption by proving claimant's disability was not due to pneumoconiosis by stating "[t]he well-reasoned and well-supported opinions of Drs. Al-Khasawneh and Gallai establish that claimant has legal CWP." JA 417. She then rejected Dr. Fino's and Dr. Castle's medical opinions regarding the cause of claimant's disability "because they concluded that Claimant suffered from neither clinical nor legal CWP." Id.

Clinchfield asserts the ALJ's finding that claimant affirmatively proved he had legal pneumoconiosis is not supported by substantial evidence and is not rational. Therefore, her finding that Clinchfield did not rebut the presumption by proof that claimant's disability was neither caused nor contributed to in any part by legal pneumoconiosis is error.

In finding that Clinchfield's evidence failed to prove claimant does not have legal pneumoconiosis, the ALJ did not find that claimant proved he had legal pneumoconiosis; only that Clinchfield did not affirmatively prove it did not exist.

18

For the ALJ to find that the opinions of Drs. Castle and Fino were not entitled to any weight on the issue of causation because they did not diagnose pneumoconiosis, the ALJ had to make an affirmative finding that the evidence proved the existence of legal pneumoconiosis. That required a specific finding that claimant's evidence affirmatively established he has legal pneumoconiosis, as without such finding, legal pneumoconiosis is only a presumed fact.

The ALJ based her finding of legal pneumoconiosis on the opinions of Drs. Al-Khasawneh and Gallai. She asserted their opinions were "well-reasoned" and "well-supported," JA 417, incorporating her prior findings. JA 415. Clinchfield asserts the ALJ committed legal error, as her finding is not supported by substantial evidence or rational. To find legal pneumoconiosis, a physician must exercise "sound medical judgment" and rely on objective medical evidence. 20 C.F.R. § 718.202(a)(4). The diagnosis must be supported by a "reasoned medical opinion." Id.

Clinchfield asserts neither Dr. Al-Khasawneh's nor Dr. Gallai's opinion is based on sound medical judgment or supported by a reasoned medical opinion. In arriving at their conclusions that claimant has pneumoconiosis, both doctors relied on claimant having never smoked cigarettes. On the other hand, the ALJ found as a fact that claimant had smoked for more than 30 years and continued to smoke for 12-13 years after he left the mines. She averaged the amount he smoked as more

19

than 1/2 pack per day. Despite this, the ALJ stated while Drs. Al-Khasawneh and Gallai "may have found additional factors, such as smoking, contributed to claimant's condition, if he had such information available, this would not have eliminated the contribution of coal mine dust as a significant factor in claimant's respiratory impairment. JA at 415. In so doing, the ALJ improperly substituted her unqualified opinion for those of qualified experts. Milburn Colliery, 138 F.3d at 533. Inferring that Drs. Al-Khasawneh and Gallai would still have asserted claimant had pneumoconiosis had claimant not lied to them is not a reasonable and is not supported by substantial evidence.

As stated in the Standard of Review section, *supra,* substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A physician, asserting pneumoconiosis exists or the respiratory impairment is caused by pneumoconiosis, who does not know the miner had smoked for 30 years, which continued for 12-13 years after leaving the mines, because the miner lied to him, cannot provide a reasoned or supported diagnosis of pneumoconiosis or of a chronic dust disease of the lung arising out of coal mine employment. Such evidence is not such that a reasonable mind would accept as adequate to support the conclusion.

The ALJ's attempts to salvage these deficient opinions by asserting the physicians would still have found that coal dust was a contributing factor, had they known claimant had been a smoker, are irrational and inadequate to support the finding of legal pneumoconiosis.  In reaching their opinions, Drs. Al-Khasawneh and Gallai noted no other possible contributing factors existed; no other toxic exposures, no history of asthma, and no family history of lung disease.  JA 65, 232, 280.  Both specifically relied on claimant's telling them he had never smoked.  Id. No evidence exists in the record, substantial or not, to support the ALJ's inference that Drs. Al-Khasawneh and Gallai necessarily would have still diagnosed legal pneumoconiosis had they known claimant's smoking history.  Such an inference is irrational and not based on substantial evidence.  The finding is purely conjectural and speculative.

Without her specifically finding legal pneumoconiosis, based on the opinions of Drs. Al-Khasawneh and Gallai, the ALJ could not reject the causation opinions of Drs. Castle and Fino because they did not diagnose clinical or legal pneumoconiosis, as she did.  JA 417; Grigg v. Director, OWCP, 28 F. 3d 416, 419-20 (4th Cir. 1994).  However, since her finding of legal pneumoconiosis was not supported by substantial evidence, and the ALJ previously found, and claimant agreed, the evidence could not prove clinical pneumoconiosis, the ALJ had no

basis to summarily discount the opinions of Drs. Castle and Fino on the causation issue.

## IV.   THE ALJ ERRED IN FINDING CLINCHFIELD FAILED TO REBUT THE PRESUMPTION UNDER 20 C.F.R. § 718.305(d)(1)(ii).

The ALJ finally asserted Clinchfield's evidence was not sufficient to rebut the presumption under 20 C.F.R. § 718.305(d)(1)(ii), referencing "for the reasons explained above."   JA 417.   Clinchfield incorporates its arguments above to challenge the ALJ's findings on this issue.   Clinchfield asserts the ALJ's findings as incorporated into this issue are not supported by substantial evidence.   Her findings are legal error as she selectively analyzed the evidence and substituted her unqualified opinions for those of medical experts and engage in conjecture and speculation, in asserting that Drs. Al-Khasawneh and Gallai would not have changed their opinions, had claimant not lied to them about his smoking history. Clinchfield states the opinions of Drs. Castle and Fino are sufficient to rule out presumed legal pneumoconiosis as a cause or factor in claimant's disability.

## CONCLUSION

The ALJ erred in finding Clinchfield failed to rebut the presumption by proving claimant does not have legal pneumoconiosis, as the ALJ's reasons for rejecting and discounting the opinions of Clinchfield's experts were legal error. Second, the ALJ improperly and unlawfully found the miner had legal

pneumoconiosis and that Clinchfield's evidence was insufficient to show that claimant's disability was not due legal pneumoconiosis. The ALJ based her finding that claimant affirmatively proved the existence of legal pneumoconiosis on medical opinions that could not be reasoned or documented, as the examining physicians relied on claimant's telling them he had never smoked, despite the ALJ affirmatively finding the miner did smoke for over 30 years. Therefore, this Court must vacate the decisions of the Board and the ALJ and remand the case for proper consideration.

Respectfully submitted,

CLINCHFIELD COAL COMPANY

By Counsel

PENN, STUART & ESKRIDGE
P. O. Box 2288
Abingdon, VA 24212
(276) 623-4408 (direct voice)
(276) 623-5528 (direct fax)
tgresham@pennstuart.com

By:    /s/Timothy W. Gresham
        Timothy W. Gresham
        VA State Bar No. 21814

## REQUEST FOR ORAL ARGUMENT

The Petitioner, Clinchfield Coal Company requests that the Court hear oral argument in this matter.

24

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

1.　This brief has been prepared using:

■　Fourteen point, proportionally spaced, serif typeface.　Specify software name and version, typeface name, and point size below:

Word 2007, Times New Roman, 14 point

Twelve point, monospaced typeface.　Specify software name and version, typeface name, and point size below:

2.　EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules or regulations; and the certificate of service, the brief contains:

_____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief of 15 pages for reply brief); OR

■　5,168 Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

_____ Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

　　I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.　If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

s/Timothy W. Gresham
Timothy W. Gresham

25

## <u>FILING AND MAILING CERTIFICATE</u>

I hereby certify that on this 20th day of February, 2014, I filed, by hand delivery, with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit, the required number of copies of this Brief of Appellant and Joint Appendix and further certify that I electronically filed the Brief and Joint Appendix using the Court's CM/ECF system which will send notice of such filing to:

Joseph E. Wolfe, Esq.
Ryan C. Gilligan, Esq.
Wolfe, Williams, Rutherford
& Reynolds
470 Park Avenue
P.O. Box 625
Norton, VA  24273

Dominique V. Sinesi, Esq.
Gary K. Stearman, Esq.
U.S. Department of Labor
Office of the Solicitor
Suite N-2117
Frances Perkins Building
200 Constitution Avenue, N.W.
Washington, DC 20210

The necessary filing and mailing was performed in accordance with the instructions given me by counsel in this case.

/s/ May Serafim
Lantagne Legal Printing
801 East Main Street, Suite 100
Post Office Box 2472
Richmond, VA  23219-2472